Thank you and good morning everyone. We'll call the first case, United States v. Edward Hilts. Ms. Pietropaolo? May it please the Court. My name is Renee Pietropaolo and I represent the appellant, Edward Hilts. With the Court's permission, I'd like to reserve four minutes for rebuttal. Very well. In this trial for communicating with an agent posing as a 14-year-old girl and in traveling to meet that girl, the government introduced under Federal Rule of Evidence 404B evidence that 40 years earlier, Mr. Hilts had sex with a 13-year-old sex worker when he was serving in the military in Thailand, and that nearly two years after this offense, he communicated with a 16-year-old about receiving oral sex from her 10-year-old sister. The government offered this evidence ostensibly to show motive and intent. The erroneous submission of this evidence, which was markedly more lurid than the conduct charged in the charged crime. How was it markedly more lurid? Since depending upon how we decide the 404B issues, we may have to decide whether or not any errors were such that there should be a new trial. It's the actual sex act with a 13-year-old that's more lurid than communicating about sex over the Internet with an agent posing as a 14-year-old. Well, he didn't know she was posing. He thought she was, what, 15? 14, actually. 14, okay. So 13 years versus a 14-year-old. Communicating. It's the communication about sex over the Internet. Communication was pretty lurid, wasn't it? It was graphic sex talk. There's no doubt about that. But what the jury hears. In chat after chat. Yes, after the first graphic chats in August. He begins communicating with her in February of 2009. So, yes, from August on, chat after chat, it's repeated sex talks with this girl who's a minor. Given his theory of the defense, wasn't motive, intent, and knowledge placed at issue by his own defense? I don't believe motive is placed at issue in the traditional sense. I would say intent and knowledge. Intent is at issue, yes, Your Honor. The question that this court says is it's not enough to just articulate a proper 404B purpose. The critical question and the question. Excuse me. I'm sorry to interrupt, but let me stop there because I think you said something important. First, a few things important. First of all, you are conceding or you're not that intent is what is implicated here. And, of course, explicitly that under 404B. That is a proper 404B purpose. Yes. You don't think motive is at issue here, even though it's set out in the rule as one of the appropriate 404B purposes. You don't think that's what's at play here. Correct. Would you also agree that at least in the child sexual abuse type of cases, that it's hard to draw a line between motive and propensity? Yes. I agree. And that's the problem in this case. There's a complete overlap between motive and propensity. Okay. But let's then assume we put motive aside and if we focus in on intent. How about if you take us through the three pieces of evidence that you contend were inappropriately admitted here and why they were not proper invocations of intent under 404B? Okay. The question that the proponent of the evidence has to answer, and the question that's not answered in this case, is how exactly does the proposed evidence, in this case actual sex with a 13-year-old 40 years ago, and conversations about oral sex from a 10-year-old almost two years after the fact, how is that evidence supposed to work in the mind of a jury to establish the proffered purpose of intent without relying on the inference that he did it before, so he probably did it this time? Well, that's what propensity is. But why is, for example, the Mike and Misty evidence not appropriately admitted for purposes of showing intent when that particular evidence, as opposed to the news groups and the other evidence, but that particular evidence can be said to relate directly to the relationship with the girlfriend, the GF, who is the subject of this prosecution? Yes, Your Honor. I think that we can parse that conversation. There is part of that conversation that is appropriate to intent. And you hit the nail. Exactly. And doesn't that set it aside from the other two pieces of evidence? Set it aside in what way? Doesn't that make it different from the other two pieces of evidence that you are challenging? And you're referring to the admission to sex with a 13-year-old? The Mike and Misty, yes. Yes. It talks about my GF. It's all about grooming her, right? I think that the government had a good argument to make that the conversation, I have a GF who is currently 14, I haven't started to work with her yet, my first visit is soon. The jury could infer properly, reasonably, that that was a reference to the supposed girlfriend who was really the undercover agent. Correct. It's the piling on and the using that so much more, if you'll forgive me, more lurid. More lurid. The jury hears him admit. You see, when we deal with propensity, which really you, I think, would have to hang your hat on here, we talk about a case where a man is indicted for some minor crime, a minor theft, and the government wants to come in with 404B, showing that he was alleged to have raped a girl. Propensity to commit crime, a lurid crime. Lurid crime to convict of the minor crime. Here, it seems from the chats and from everything else, there was intent to commit a lurid crime. The chats... Or at least the admission of the evidence, all three pieces of it. We have a defendant who testifies at trial, and he says his intent is absolutely to have sex with her, but not yet. Until she's of age. Correct. And he explains that these chats aren't saying what he's going to do when he gets there, but rather as a way of sublimating their desires until they can lawfully fulfill them. But to rebut the defendant's theory of defense, wasn't it necessary to bring in this extra evidence for the government to know he wasn't going to delay sexual activity? He was going to have sexual activity as soon as he got the chance. The opening statement, the defense opening statement, talks about he's been denied sex for 30 years, he's a 63-year-old, he wants to have sex with a young woman. I mean, that's it. The poor things had this tough life. I didn't read it that way, Your Honor. You know, certainly if he had sex before and with a minor, that's probative of intent. That's probative of the fact, it said in the opening statement, he likes sex. Is he paterfamilias here? I'm going to take care of this young girl and nurse her until she's of age? His defense isn't, and this is where I think it would be proper, his defense isn't, I'm incapable of having sex with a minor. I would find that repugnant and I'd be physically incapable, in which case it would be proper to rebut with, he had sex with a minor before. This is, I am sexually interested in her, but I want to wait until we can do it legally. He introduced this entire body of chat. Well, that's his story, but there's other evidence in the case that, of course, would suggest his intent ultimately was more than just having an appropriate and not heavily sexual relationship. Absolutely. The evidence is sufficient to establish his intent, but the question for 404B isn't, is the evidence sufficient? It's, can we have a sure conviction that this other act didn't influence the jury? I asked you a few minutes ago if you'd take each piece of evidence, and I believe you did agree with me or concede that there is a distinction for purposes of intent between the Mike and Misty evidence and the other two pieces of evidence that you challenge, right? Because it centers on the girlfriend, which the other two pieces of evidence do. When I refer to the Misty and Mike, parts of the chat that I say that I believe can come in for intent are limited to the references to the girlfriend. Yes, Your Honor. But you have at no point suggested, have you, that somehow the evidence or that that evidence should have been redacted. You never conceded that that piece could have come in appropriately, but the rest of that chat could not have, had it? We talk about the chat in toto. The government threw out one 404B litigation. So the answer is yes. I'm trying to give you an opportunity to talk specifically about the other two pieces of evidence, which I'm suggesting to you may not have the same indicia of intent that the Mike and Misty evidence has. And again, when he's referring to the 10-year-old girl, this Court talked about intent and motive in the Durrell-Smith case from 2013, and it says in order for us to divine intent from these prior bad acts, we have to presume something about the defendant's character. In that case, it was that he was a drug dealer. In this case, it's that he has a sexual interest in children. That's the very definition of propensity. It's a predisposition, a tendency, a weakness toward sex with children. Even if the evidence presented had a propensity to establish the offense, that doesn't make it excludable, does it? If the government is able... The evidence of intent could be so strong that it could outweigh the effect of propensity evidence. There's no way that prior sex with a 13-year-old 40 years ago could speak to intent in 2009. And that wasn't the only evidence. He also had an encounter with a girl in Canada after this offense. She's 16 at the time. Yes, and so there's communication between him and the girl in Canada, but there's not a sexual relationship according to the evidence that is introduced at trial. The question then is... There was also evidence that he had a relationship with his niece. I mean, it wasn't just evidence of an encounter 40 years before, but it was a string of events leading up to the time of his arrest and after his arrest. And the niece evidence did not come in at trial and was hotly contested at sentencing. That was hotly contested at sentencing. Yes, that she was psychotic at the time or suffering a psychosis at the time. My question was, just because evidence has a propensity character doesn't make it excludable, does it? If it's propensity in and of itself, yes, it is excludable. The fact that it's very probative of intent doesn't mean it can come in. If it's propensity and only propensity or it's only intent through propensity, then it's categorically excludable. What is for a pattern, practice, motive, intent, right? Exactly. State of mind. Yes. Not specifically mentioned. And only failing any of that do we say it's just propensity and therefore impermissible. Now, in the Mike and Mindy thing, that was brought in. The jury was in the box ready to go when the judge ruled on that, when it was brought to the judge's attention. And the defense attorney had that since May 1st. And the judge dealt with it, balanced, treated it quite effectively. I think where we disagree, Your Honor, is that there is no articulation of how does that evidence prove intent without the inference that he was sexually interested in children before and so he's sexually interested now. That's character. That's his propensity, his weakness towards sex acts with children. Ms. Pietra Paolo, in response to Judge Fuente's last question, it strikes me that you did not respond with something that I would think helps you, and that is language from the jurisprudence of this circuit, specifically that we require the proponent of the evidence to explain how the evidence fits into a chain of inferences, a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference. Correct. No link of which. Correct. And that's the only link here that the government offered. In fact, in its pretrial litigation, it's saying, we assume he's going to offer entrapment as a defense, and this is his predisposition. And in truth, that's exactly how this came in, to show his predisposition to commit sex acts with children. Ms. Pietra Paolo, I'm sorry. I just was going to ask one further question. Even if one of these pieces was, let's just say, let's say you're right, yeah, that shouldn't have come in. Wouldn't that be harmless error, depending on the standard of review, whether it was preserved, the issue was preserved or wasn't? But assuming harmless error applies, the evidence in this case was very strong, and one of the strongest pieces of evidence was the defendant's testimony. Strong, essentially, because it was very calm, I'm sure. It was incorrect. The standard of review is, can the government prove beyond a reasonable doubt that the error, that this was wrong? The defendant conceded a lot, didn't he? He did. Intent was the only element that was at issue. And so for this court to find that the erroneous admission of this evidence was harmless, we have to find not just that the evidence of intent was overwhelming, but also that it was uncontested. This court has said that in numerous cases. And, in fact, in Caldwell. Uncontested. In Caldwell, the court said the defendant didn't just sit back and put the government to its proof. He testified about what his intent was. He introduced his ream of text. You're not suggesting that the jury believed him. They can't believe him, Your Honor. No, no, I'm talking about just the whole body of evidence. I mean, look at count two. You barely challenged count two. And that was to commit a sex act. And he was convicted. And he barely challenges that count. Right. I mean, your challenge is pretty much restricted to count one, isn't it? No, the count one error infects the count two. And here's why. The court rules that sex activity at count one is the same as sex act at count two. She rules that. The parties actually treat those terms. They conflate them throughout the closing and the rebuttal. They say, and so when the court and the parties themselves commingle those terms, sexual activity and sexual act, how could we expect the jury to differentiate between those terms? And we actually have the U.S. attorney in closing saying to the jury, if you find he intended to have Pennsylvania decent contact with this minor, so that's the travel, or if you find he intended to entice Ashley to engage in Pennsylvania indecent contact, then he's guilty. He goes on to the count two immediately thereafter, and he says to the jury, I'm not going to belabor the point about why he's also guilty of traveling with intent to engage in sexual activity, which we know is the count one language. Is it your position that the terms are synonymous? It is, which is why the court erroneously instructed the jury that they could rely on the Pennsylvania offense There's something about that that doesn't at least make sense. Activity to me sounds like something plural. There's various elements to an activity, whereas an act is singular. Take for example terrorist activity versus a terrorist act. An act being a car bombing, but terrorist activity is a lot more expansive. It's certainly plural, it's not singular. Sexual activity is broader, is it not, than, or could be broader than sexual act. In other words, you cannot, in my view only, and I speak only for myself, you cannot have a sexual act without it being sexual activity, but you could have sexual activity without it being a sex act. Well, sexual activity has to have a definition and there's not one in the statute. And the statute has been written very broadly, hasn't it? I mean, when Congress chooses to draft a statute as they did with 2422b and uses language, any sexual activity for which any person can be charged with a criminal offense or attempts to do so, that's pretty broad language, isn't it? They use language like any. Isn't it broad? It's broad, but the any is not dispositive. And I say that by looking at the 2015 case in Yates. Well, how about the Article A, a criminal offense? 3126 of Title 18 of the Pennsylvania Crimes Code talks about indecent assault. That's a criminal offense, right? It is. And why isn't this a simple matter of saying that 3126, the indecent contact, the indecent assault statute which outlaws indecent conduct, the kind of criminal offense that simply folds into the language of 2422b? And as a dear friend and colleague of mine would say, why isn't that game set and matched? I would say there's several reasons, Your Honor. I lay out in my reply brief, and I won't restate here for you, why Judge Posner got it right when he interpreted the statute by looking at the legislative history in the plain language. Judge Posner actually utilized a form of analysis in going back and forth between sexual act and sexual activity, which had recourse to a definition that is actually limited to Chapter 109A of the legislation. We know that the travel. Would you just answer my question, please? I mean, as used in this chapter, and that's where we have sexual act for purposes of 2D. It says as used in this chapter, but we know that in the travel statute, it actually incorporates that language from that other chapter. So we use that language in other chapters, notwithstanding that as used in this chapter. Do we have to reach the issue of the circuit split? If you agree and argue, you seek to have us adopt the Seventh Circuit's position. But even if we consider the court's instructions under the standard you think should apply, and find that the district judge, or assume, we don't even have to find, assume that under that standard the district court committed some error in her instructions to the jury, why wouldn't the error be harmless? The error isn't harmless because the erroneous instruction had some effect on the jury. You would have to have a sure conviction that the erroneous instruction didn't affect the finding. You aren't arguing we must decide the circuit split, are you? If you agree on the 404B issue, then we remand for a new trial. If we find that the evidence was overwhelming, that his intent all along was to engage in sexual activity, isn't that sufficient? I don't think so, because you'd have to find both that it was overwhelming and that it was uncontested. And he contested it. He testified. That's what jury trials are about. They convicted him. The erroneous admission of the lurid 404B, which is a confession to having had sex with a 13-year-old 40 years ago, over a period of months, so infected everything. It lures the jury away from deciding this case based on the evidence of what chats were going on. What did he say in those chats? And it directs them to convict him based on his sex with a minor while he's in the military. They want to right a wrong. They don't care. Can you answer my question, the one about do we have to decide the circuit split, in your view? If it goes back, I'm not sure about that, Your Honor. If you vacate and remand and send it back because of the 404B error, we have a new trial, and it's unclear how things would develop during that trial. I do believe that there's many reasons, if you were to decide the split, not to follow the Fourth Circuit, the least of which is that all the Fourth Circuit does is cobble together dictionary definitions of the word sexual inactivity in a way that the Supreme Court in Yeats says we shouldn't do. We're supposed to read words in the context of the statute, which is you look at the neighboring words, prostitution or any sexual activity for which any person can be charged. Had Congress really believed that sexual activity for which any person could be charged is just active pursuit of libidinal gratification, which is the Fourth Circuit's definition, they would have had no reason to add that extra definition in 2427, which is production of child pornography, because certainly the active pursuit of libidinal gratification would include production. We have to get over to the other side. Thank you, Your Honor. Thank you, Ms. Pietropano. Ms. DiTullo. I please the Court, Jane DiTullo, on behalf of the United States. Good morning. Before I move on to the 404B issue, I'd just like to emphasize that on the first issue, the definition of sexual activity, we are on plain error review. So the very fact of the circuit split means that you don't have to decide it. The very fact of the circuit split means that it's not clear error. The reason that we're on plain error review, the reason this wasn't preserved, is that the defendant's motion to exclude. I think that is not necessarily clear. I'd like to explain why I think it is clear if you look at the colloquy about the charging. But the issue was initially raised by defense counsel. He just didn't raise it again, right? He raised the issue in objecting to the proposed supplemental instruction, and his motion is clear that he only objected to that. In his reply brief, Mr. Hiltz cites Russell, in which the defendant had raised an objection to a jury charge, but the court hadn't ruled on it. The district court hadn't ruled on it. This court found that that raising of the objection was enough because, and the Russell decision turned on the fact that the colloquy made clear that the district court understood the nature of the objection and its extent. Here, the opposite is true. If you look at page 401 of the appendix, the district court interprets this objection to, and this is a quotation, to the very short and extra supplemental instruction. Well, you know, I don't think you want to spend all your time on this. Right. But I just suggest to you, we read the briefs, we know this issue, and we would apply one standard or another depending on what we find. But why don't you move to the issues? Do we have to decide the surface split? No, Your Honor, because I believe that really the holding in Taylor is that there has to be some sort of, that a non-contact crime can't qualify. I believe that it's discussion about how sexual act should have the same meaning as activity is purely dicta. You don't even have to reach that issue here, do we? No. Sexual act versus sexual activity? I think that you don't have to reach the issue first on the harmlessness or the failure to show prejudice prong, because the jury necessarily found that the defendant had the intent to engage in a sexual act, the same definition that he advocates for for the enticement count. So it's highly unlikely that the jury found that the defendant intended to engage in a sexual act, but he only intended to entice a minor to engage in some lesser sexual activity. Well, as charged to the jury in the Pennsylvania statute that was violated was indecent contact. Yes. And I think indecent contact, it was defined to the jury as any touching of the sexual or other intimate parts for the purpose of arousing or gratifying sexual desire. As defined, maybe it is indecent contact. Of course, that's not the whole Pennsylvania law, because Pennsylvania law goes much further. There are cases that construe it into, you know, it can be a back, a shoulder, a leg. It doesn't have to be. And even the word intimate here, you know, what's defined intimate? I know, you know, Judge Smith would give me the definition where you know it when you see it. It's like pornography. But intimate is not free from doubt. But at least as defined to the jury, there's a credible argument that it was sexual activity. Absolutely. And I think that there was the elaboration on the Pennsylvania indecent contact statute that was in the proposed supplemental instruction that was stricken by the district court on the basis of Taylor. That was part of the instruction that talked about the neck, the face, the back of the legs. In looking at this issue, we have to determine whether the jury instruction was correct and not whether the Pennsylvania courts have occasionally interpreted it more broadly. I would argue that even in that broader interpretation, it would still count as sexual. Well, but the Pennsylvania courts' interpretation of their own statute, when the term indecent contact is not otherwise defined in the statute, is what defines what indecent contact is, right? Yes. We have to look to what the Pennsylvania courts have said about it. It can be, you know, with clothing on. It can be, you know. But I think what's also important is it's not just the touching. It's for the purposes of sexual arousal. And the reason in the broader enticement statute, we have to look at what the sexual activity is to figure this out. But we can't lose sight of the essence of the enticement statute, and that is enticing, persuading, or engaging a minor to engage in that activity. All right.  Even assuming that the instruction could have been done better, was there harmless error? Absolutely, Your Honor. I think the fact that we have, you know, even if you don't believe that we're on plain error, you can still find this harmless beyond a reasonable doubt. And I say that with confidence because of the sexual act instruction on count two. This is a kind of a very rare case in which you actually know that the jury found that the defendant had the intent to engage in a sexual act. You don't have to infer it from the weight of the evidence, which you could also do. But here you have the jury making that finding on count two. And I don't see count two as being, or three or four, as seriously challenged here. The challenge is primarily to count one, isn't it? I would agree. I think it's the challenge is primarily to the instruction on count one. So your view is that the indecent contact statute is subsumed within sexual activity? It is. But it's not coterminous because what is important in the enticement statute is the idea that you're getting the minor to engage in that activity. We're not talking about someone- The sexual activity statute invites the reader to look at criminal offense, which is under state law. Yes. Is that right? Yes. And when you do that, you see that indecent contact is indeed, in your view, is sexual activity? Yes, Your Honor. Okay. I wanted to ask you about the propensity evidence. Yes. It does seem to me that bringing in all of that evidence that resulted from the chats and resulted from the evidence that was taken at the scene of the arrest, presenting all of that evidence would steer a jury to be inclined to convict on the other offenses. Well, you know, I think that echoes to kind of the weighing of the evidence, but I- We're talking about the pornography offenses where we're joined together with the travel and enticement charges. Yes. And the idea that the- You know, the present counsel mentioned the Smith case, 2013 opinion, where evidence that a defendant was a drug dealer in 2008 was not admissible to show his intent in 2010. And that's because the impermissible propensity inference there was that the jury had to draw the inference that because he had- he was a drug dealer in 2008, he was also a drug dealer in 2010. It didn't have to do that here. And this is why the defendant's discussions and expressions of his sexual interest were coterminous with the charged crime. Wouldn't it be more valuable here to talk, rather than in the abstract, to talk about the evidence itself? There are three pieces of evidence. I invited Ms. Petropalo a couple of times to address each one of those three and try to find differences, and I didn't get very far. So I'll try it with you. First of all, we have the- what is it- Mike and Misty evidence. Yes. Would you agree that it differs from the other two pieces of evidence under attack here in that it does rightly ask a jury to draw a reasonable inference that the 14-year-old GF being referred to is the girlfriend at issue in this prosecution? Yes. It is different from that evidence in that that reference to the 14-year-old girlfriend is direct evidence, and the evidence of deck is important in giving context- And evidence relevant to intent. Would you agree with that? Absolutely. Would you also agree that in these sorts of cases, raising motive is different from raising motive in some other cases? Judge Berry gave a hypothetical regarding a theft case. I mean, if you were suggesting motive, for example, to commit some kind of embezzlement, you could use as motive evidence that somebody had some very, very deep financial problems. That's motive for committing this embezzlement. You needed the money. Here in the child sexual abuse area, we're talking about something completely different, and it seems that what the government's doing is suggesting that his desire for young children, on other occasions, is proof of motive. That sounds awfully like propensity to me. Well, I guess I think motive is going to always be relevant to intent, and I think that the difference in child pornography cases between- Motive can certainly support intent, but for purposes of 404B, there are two discrete concepts in the rule. Yes. That's true, and I think that for child pornography or child exploitation cases, the difference between propensity and motive is the difference between wanting to do something- Why don't you just say, I don't need motive for purposes of the Mike and Misty? That's true. I don't need motive for Mike or Misty or any of these. All right. How about the other two pieces of evidence? Because they don't have the same indicia of intent, the reference to the 14-year-old GF that the Mike and Misty evidence has. Well, I would disagree on that, Your Honor, respectfully. The Hannah and not Natasha evidence about sexually pursuing girls in Canada, he began speaking with Natasha in 2009 at the same time that he was talking to Ashley Anthony. There are chats in the record that he discusses Natasha with Ashley Anthony. He also discusses Natasha in the Mike and Misty chats. He says, I have another one in Canada. I'm going to see her soon, too. So that really is a continuing- He says that to- He says that to Mike and Misty. Yes. I've said sorry to Mike and Misty. Yes. But I think that shows, but the fact that he also discusses Natasha in the Mike and Misty chat shows that that act, that his sexual pursuit of Natasha began at the same time that he was pursuing Ashley Anthony. So I think it really is- Natasha is another crime, another incident. Why doesn't it show propensity? So I think it shows propensity. He likes Natasha, who is what, 16? She's 14 at the time he begins talking to her. When he visits her, she's 16. She's 16. Okay. That's somebody else. That's another incident, probably another criminal episode. But why isn't that another criminal episode intended to show his propensity to like and engage in sex with young girls? Well, like all 404B evidence, it could be used to show propensity. But the reason that it was relevant for a non-propensity- But if any link of which is to show propensity, then doesn't it have to stay out under our jurisprudence? But it's not. There is a logical chain of inferences, no link of which is propensity, and that's this. It's that the fact that he was sexually pursuing Natasha in 2009 means that at that time, he had a sexual interest in young girls. And that is the sexual interest he disclaims. It's his entire defense. It's evidence of the charges in this case. It is. It's evidence of his intent in this case that he has a sexual desire for 14-year-olds. In terms of intent, didn't he concede that he was meeting her to have contact with her? To be precise, he said he was going to give her hickeys under the collar? He said- Is that not indecent contact? That is indecent contact. And if it is, why did you need all that other evidence? Because he claimed- Well, first of all, we have to prove that his intent was to engage in a sexual act. His argument was that he was going to forbear. The fact that she was 14 was an un- It was an act of generosity. He would forbear from having the sex that he loved and missed. He would forbear until the girls- I guess you can still use that word for a 14-year-old- were no longer minors. Or they could get to South Carolina where he thought they might be able to do something. He wasn't going to forbear on this occasion. He explicitly said he was going to have physical contact. His defense was, I would forbear. Right. So is it- I think the evidence shows that he truly wasn't going to forbear. And I think that's why we win on harmlessness, even if we don't get this 404B evidence. How about talking about that? The harmlessness? Let's just assume hypothetically that the Mike and Misty evidence comes in and the other two pieces of evidence should have stayed out. That's just my hypothetical. What do you do then with the harmless error? Well, first of all, I'd like to point out that in Mr. Hiltz's reply brief, he says that the Chapman standard, harmlessness beyond a reasonable doubt, applies. It doesn't here. This is evidentiary error, not constitutional. But here, it's not often that on appeal we're arguing that the credibility issue and harmlessness. So your burden is what? What's the standard? The burden is that we have to show a high probability that he would have been convicted absent the evidence. And we can do that because the actual direct evidence was so strong in this case. Did he really raise the Natasha? No, I think that would be a tougher standard. I don't think he did really. Yes, I think the Natasha evidence should be reviewed for plain error because he didn't. Because it was clear in the division of the district court's original decision that the evidence that he pursued minor girls in Canada was going to be decided at trial. I would also say that the argument that it counts as communications that were taken from his phone is a non-starter because, first of all, the communications were not entered into evidence. He was asked about them during cross-examination. And second of all, some of the communications were in 2011 after his phone and laptop had been confiscated in 2009. Is there a need from your standpoint for us to decide the conflict, I believe you were asked before, between the Seventh Circuit and the Fourth and the Ninth Circuit? Well, I guess if you were looking at those opinions broadly and you see the conflict as being, you know, is there a sexual act and you feel like, then yes. But if you find that it's harmless or that he fails to show prejudice under a plain error review standard. We don't even have to find homeless. Before we found one way or the other on that, we could just assume that the Seventh Circuit reading was correct and under that assumption, even if that was the correct reading, we then move on to the harmless. Yes. We don't have to decide it. Absolutely. I think that's correct. Okay. Ms. Teula, thank you very much. Thank you very much, Your Honors. Thank you. I'd like to start where we left off. And if we assume that the Seventh Circuit got it right and that Judge Ambrose herself got it right, that sexual activity is no broader than sexual act, then the instruction is harmless because. . . You won't concede for a moment that an act is a singular event, whereas activity embraces an act plus more? The idea is we need a definition for sexual activity. Do you view the term activity as in sexual activity as a singular event? It can be a plural event, Your Honor, but it has to have meaning. So sexual activity has to, in our view. . . I would, again, urge you to adopt the Seventh Circuit definition. I understand that's what you prefer. But the Fourth Circuit, it can't just be this. . . I have trouble understanding sexual activity as a singular one-off event as opposed to. . . Well, the government's instruction actually says that. It's prostitution or sexual activity for which a person can be charged with a criminal offense. The criminal offense is, were, sexual intercourse or Pennsylvania indecent contact. The judge instructs them. . . In her belief, these terms are equal. And then she says you can rely on Pennsylvania indecent contact to satisfy sexual activity. Pennsylvania indecent contact both can and cannot satisfy the Sexual Act definition. But she defined it as sexual touching, right? Of the intimate or sexual parts. Correct, Your Honor. It's the United States attorney in his closing who goes beyond that and tells them. . . . . . to come here, hug, kiss, and give her hickeys. That's Pennsylvania indecent contact. That's sexual activity at count one. And then he combines it with count two to say if you find he only traveled to engage in indecent contact. . . I'm not going to belabor the point as to why that's also sexual activity at count two. Again, we know that the court viewed those terms as equal. The parties viewed them as coextensive and synonymous. So the jury couldn't have differentiated between the two. We can't assume that the jury found that the sex act was an actual touching under the clothing of the genitalia. Because we don't have a special verdict form. So that's why the erroneous instruction at count one infects count two and requires reversal of both. I should probably add. . . I'm not going to waste the court's time. Did the district court, looking at the 404B issues here, did the district court engage in any meaningful 403 analysis with respect to any of the pieces of evidence that you challenged? It did not, Your Honor, because all it says is the evidence is prejudicial, but all the evidence is prejudicial. You're contesting intent, and this goes to motive and intent. No, but she did say that the relevance of the evidence outweighed the prejudicial effect. It's not enough under this court's teaching to just say that. You have to engage in a meaningful balancing. Oh, come on. The Mike and Mindy, that was during the jury's in the box. This thing was raised then. That's because the government hadn't turned over that to the court for her to conduct the review. The government turned it over May 1st, according to the defense attorney. To the defendant, but the trial judge admits that she has to actually review that evidence. So that's why it happens at that moment. The Mike and Mindy is never mentioned in the pretrial litigation. That was new. No, so she, but the defendant had it since May 1st, and you're at trial, and I think it was June 17th, and this is the first time it's presented to the, I'm just saying, she went through the steps correctly. Maybe she could have put a little more meat on their bare bones, but you've got a jury in the box. You have this belated, you know, offer, and she went through the steps. Respectfully, Your Honor. The evidence is all prejudicial, but it's the prejudice of proof. But it's not unfairly prejudicial under 403, and she did it right. I'm sorry. Go ahead. Under 404B, the reason it's unfair, of course it's prejudicial. The reason it's unfairly prejudicial is because it lures the jury into deciding guilt not based on these communications with Ashley Anthony. Well, that's your argument. But it's luring them to want to convict him, to right this previous wrong. He had sex with a minor. It's the words out of his mouth. I confess. I admit I had actual sex with a 13-year-old. So whatever you think he did now, whatever intent you think he acted with, you can never take that drop of ink out of the glass of milk. He admit I had sex with a 13-year-old, not just once, but over a period of months. That's why it's not simply just prejudice and propensity. It's luring the jury to decide guilt based on that bad act that he was never brought to justice for. Thank you very much. Thank you. May I just add, whether or not you agree with the trial issues, there is also the jury, I'm sorry, the guideline error. Sentencing. Yes, the improper grouping. Go ahead. I'll find out for you. That's just it, Your Honor, that the grouping error requires a new sentencing, whatever you decide on the sentencing errors. But we do, of course, ask for a new trial in all counts. Thank you, Your Honor. Thank you very much. I've never heard the you can never remove the drop of ink from the glass of milk metaphor before. It's in one of your cases. I'm just missing, well, see, obviously I forget things that I read. He's the author of it. I hope not. I'm not sure that you're the author, but it is a Third Circuit opinion. I don't think so, no. We care very much about milk up in Miami. It's also part of the state. None of us have ever heard of it. By the way, just personally, I think the brief in the argument is great, but the briefs were very good. Oh, thank you very much, Your Honor. Very helpful. Thank you. Appreciate that.